UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JENNIFER BARRIOS, on behalf of herself
and all others similarly situated,

     Plaintiff,        MEMORANDUM AND ORDER
                15-CV-5291
 - against -


ENHANCED RECOVERY COMPANY, LLC
and JOHN DOES 1-25,

     Defendants.
----------------------------------------------------------x
GLASSER, Senior United States District Judge:

  Presently before the Court is Defendant Enhanced Recovery Company, LLC's ("ERC") motion for summary judgment pursuant to Fed. R. Civ. P. 56 as to Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. For the reasons stated herein, ERC's motion is granted.

## BACKGROUND

  The facts, undisputed unless otherwise indicated, are as follows. On or about December 10, 2013, someone opened a wireless service account with Cellco Partnership d/b/a Verizon Wireless ("Verizon") under the name of "Jennefer Berios." (ECF No. 51 (Def. 56.1 SOF) ¶3). The account was governed by a Verizon Wireless Customer Agreement (the "Agreement"), dated November 21, 2013, which provided, in relevant part:

> If you fail to pay on time and Verizon Wireless refers your account(s) to a third party for collection, a collection fee will be assessed and will be due at the time of the referral to the third party. The fee will be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent.

(Def. 56.1 SOF ¶¶ 5, 7) (the "Collection Fee Provision").

The account became inactive on March 7, 2014. (Def. 56.1 SOF ¶ 8). On May 21, 2015, Verizon referred the account to ERC for collection. (Def. 56.1 SOF ¶ 9). The amount referred for collection consisted of $99.06 in principal debt and a collection fee of $17.83 (18% of the principal amount), amounting to a total of $116.89. (Def. 56.1 SOF ¶ 14). According to ERC, this collection fee was not a fee owed directly to them, but rather constituted part of the debt that the debtor owed Verizon pursuant to the Collection Fee Provision. (ECF No. 52 ("Davis Decl") ¶ 16). ERC states that such collection fees are not retained by ERC, but instead remitted directly to Verizon. (Davis Decl. ¶ 16).

On May 22, 2015, ERC spoke to Plaintiff over the phone. (Def. 56.1 SOF ¶ 18). During the call, Plaintiff gave her mailing address and the last four digits of her social security number, which matched the information that ERC had on file for the account. (Def. 56.1 SOF ¶¶ 13, 19). That same day, ERC sent an initial collection letter addressed to "Jennefer Berios" at that mailing address. (Def. 56.1 SOF ¶ 16). In the header, the letter itemized the debt owed, indicating that a "Principal" of $99.06 and "Collection Fees" of $17.83 were due, for an "Amount of Debt" of $116.89. (ECF No. 52-2). The letter also indicated that the "Creditor" was "Verizon Wireless." (ECF No. 52-2). The body of the letter read, in relevant part, as follows:

**COLLECTION NOTICE**

JENNEFER BERIOS

Our records indicate that your balance with Verizon Wireless remains unpaid; therefore your account has been placed with Enhanced Recovery Company, LLC for collection efforts.

Upon receipt and clearance of $116.89, your account will be closed and collection efforts will cease.

Unless you dispute the validity of the debt, or any portion thereof, within 30 days after your receipt of this notice, the debt will be assumed to be valid by us.

(ECF No. 52-2). Thereafter, ERC made subsequent efforts to reach Plaintiff by phone, but these were not successful. (Davis Decl. ¶ 14). Prior to the commencement of these proceedings, Plaintiff did not dispute the validity of the debt with ERC, either verbally or in writing. (Def. 56.1 SOF ¶¶ 24, 25).

In September 2015, Plaintiff brought this action on behalf of herself and all others similarly situated, alleging that ERC violated various provisions of the FDCPA. (ECF No. 1 ("Compl.")). The factual basis for Plaintiff's claim is that she "did not owe Verizon Wireless 'Collection Fees' of $17.83," that ERC "demand[ed] an amount for collection fees in its collection letters to Plaintiff and others similarly situated when said charges were not yet, if at all, due," and that ERC "represent[ed] to Plaintiff and others similarly situated that an amount was due for collection fees in its collection letters when said collection charges weren't yet, if at all, due." (Compl. ¶¶ 23, 49-50).

On November 11, 2016, ERC informed the Court that, during discovery, Plaintiff had given sworn deposition testimony suggesting—apparently for the first time—that the Verizon account was fraudulently opened by an unknown third party. (ECF No. 33, at 2). Plaintiff never amended her pleadings to reflect this allegation. Nevertheless, Magistrate Pollak granted ERC leave to amend its answer to assert an affirmative defense of bona fide error. (ECF No. 45). *See* 15 U.S.C. § 1692k(c).

ERC moves for summary judgment on all claims.

## DISCUSSION

I. **Standard of Review on Motion for Summary Judgment**

Summary judgment should be granted where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

3

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "Where, as here, the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can 'point to an absence of evidence to support an essential element of the nonmoving party's claim.' " *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015) (quoting *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995)), *cert. denied*, 136 S.Ct. 1684 (2016). If the movant satisfies this initial burden, summary judgment must be entered unless the non-movant "go[es] beyond the pleadings and … designate[s] specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted); *see In re World Trade Center Lower Manhattan Disaster Site Litigation*, 758 F.3d 202, 212 (2d Cir. 2014). A properly supported motion for summary judgment may not be defeated by assertions that are too threadbare, unsubstantiated, speculative or conclusory for a reasonable trier of fact to return a verdict in the plaintiff's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient…."); *Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 547, 586 (1986) (the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts"); *see also Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (collecting cases).

## II.   Liability Under the Fair Debt Collection Practices Act

The only specific subsections of the FDCPA that are claimed to apply in this case are: 15 U.S.C. § 1692f(1) (prohibiting collection of fees that are not "expressly authorized by the

4

agreement creating the debt or permitted by law"); 15 U.S.C. § 1692f (prohibiting the use of "unfair or unconscionable means to collect or attempt to collect any debt"); 15 U.S.C. § 1692e(2)(A) (prohibiting the misrepresentation of "the character, amount, or legal status of any debt"); U.S.C. § 1692e(10) (prohibiting the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"); and 15 U.S.C. § 1692e (prohibiting the use of "false, deceptive, or misleading representations or means in connection with the collection of any debt"). (Compl. ¶¶ 49-50). The Court will address each subsection in turn.

1. <u>15 U.S.C. § 1692f</u>

Under the FDCPA, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Such "unfair and unconscionable means" are defined to include, *inter alia*, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). In *Tuttle v. Equifax Check*, 190 F.3d 9 (2d Cir. 1999), the Second Circuit devised a three-part test to determine whether a charge runs afoul of subsection 1692f(1):

> *If state law expressly permits service charges*, a service charge may be imposed even if the contract is silent on the matter;
>
> *If state law expressly prohibits service charges*, a service charge cannot be imposed even if the contract allows it;
>
> *If state law neither affirmatively permits nor expressly prohibits service charges*, a service charge can be imposed only if the customer expressly agrees to it in the contract.

*Id.* at 13 (emphasis in the original). Plaintiff concedes that the collection fee assessed in this case is not expressly prohibited under New York law, and that the third *Tuttle* prong therefore applies.

Plaintiff has failed to show that there exists a triable issue of fact as to whether ERC violated 15 U.S.C. § 1692f(1). It is undisputed that Collection Fee Provision reproduced above governs the Verizon account and unambiguously imposes a fee, "calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent," in the event that the debtor "fail[s] to pay on time and Verizon Wireless refers [the debtor's] account(s) to a third party for collection." The contract specifies that the fee is "due at the time of the referral," which in this case occurred on May 21, 2015. Accordingly, the fee was valid and due when the collection letter was sent on May 22, 2015. ERC did not collect or attempt to collect "any amount" that was not "expressly authorized by the agreement." 15 U.S.C. § 1692f(1).

Plaintiff notes that the contract only provides for the imposition of collection fees "permitted by applicable law" and contends that summary judgment must be denied because EPC failed to specify which "applicable law" authorized the fee at issue here. This argument is most curious, as Plaintiff elsewhere concedes that the fee is ***not*** prohibited under New York law for purposes of the *Tuttle* test discussed above. In any event, it would be an abuse of the FDCPA to allow a plaintiff opposing summary judgment to challenge the validity of a debt contract by cryptically suggesting that it is not authorized by law, without identifying any actual legal authority for that proposition. *See Beeks v. ALS Lien Services*, 2014 WL 7785745, at *10 (C. D. Cal. Feb. 18, 2014) ("It is plaintiff's burden to demonstrate why the collection fee is illegal, rather than defendants' burden to justify that it is legal . . . .") (citations, quotations and alterations omitted). Under New York law, contracts come to the court with a presumption of legality. *Brearton v. De Witt*, 252 N.Y. 495, 500 (N.Y. 1930); *National Recovery Systems v. Mazzei*, 123 Misc.2d 780, 781 (N.Y. Sup. Ct., Suffolk County 1984); *Hudson Specialty Ins. Co. v. New Jersey Transit Corp.*, 2015 WL 3542548, at *3 (S.D.N.Y. Jun. 5, 2015). Plaintiff's

attempt to reverse this burden by characterizing the legality of the Collection Fee Provision as a "question of fact," the absence of which ERC must prove on a motion for summary judgment, is unavailing. True, the illegality of a contractual provision sometimes turns on questions of fact, *but only where it is clear by what authority the contract is alleged to be illegal in the first place.* *See, e.g., Beeks*, 2014 WL 7785745, at *10-*12. Here, there is no question of fact, because Plaintiff has failed to cite legal authority—state or federal, statutory or common law—suggesting that the Collection Fee Provision would violate "applicable law" under ***any*** view of the facts. A contrary rule would turn summary judgment procedure into a nullity whenever the movant is the party seeking enforcement of a contract; the party opposing enforcement could simply recite that the contract is illegal and argue, as Plaintiff has done here, that by such recitation a genuine issue of material fact was now raised.

The allegation that Plaintiff was not the person who opened the Verizon account or entered into the Agreement is irrelevant. The weight of authority holds that, where a collector does not attempt to collect more than what the creditor is owed under the contract, they may not be held liable under subsection 1692f(1) merely because they sought to collect from the wrong person. *See Thompson v. CACH, LLC*, 2014 WL 5420137, at *6 (N.D. Ill. Oct. 24, 2014); *Taylor v. Midland Credit Management, Inc.*, 2008 WL 544548, at *4 (W.D. Mich. Feb. 26, 2008); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991). "An attempt to collect from the wrong individual is better characterized as going to the character or status of the debt [under 15 U.S.C. § 1692(e)(2)(A)] rather than the amount owing." *Taylor*, 2008 WL 544548, at *4. However, even if the Court were to disregard this line of cases and deem such a claim cognizable under subsection 1692f(1), it would hold, for the reasons discussed further below, that this theory of liability is procedurally barred. *See infra*, Discussion II(2).

Therefore, Plaintiff's claim under Section 1692f(1) fails. Because Plaintiff makes no argument, independent of her claim under subsection 1692f(1), that ERC used "unfair or unconscionable means to collect or attempt to collect any debt" within the meaning of the residuary language in Section 1692f, the Court holds that Plaintiff's claims under Section 1692f fail as well.

2. 15 U.S.C. § 1692e

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Such "false, deceptive, or misleading representation[s] or means" are defined to include, *inter alia*, "[t]he false representation of—(A) the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2). In addition, subsection 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiff's claims under subsections 1692e(2)(A) and (10) may be considered together, as the factual bases for these two claims are identical.

Plaintiff contends that ERC violated these provisions of the FDCPA by attempting to collect a debt from her even though she never entered into the Agreement. Courts have held that such conduct may amount to a *prima facie* violation of subsections 1692(e)(2)(A) and (10). *See Velazquez v. NCO Financial Systems, Inc.*, 2011 WL 2135633 (E.D. Pa. May 31, 2011); *Valdez v. Capital Management Services, LP*, 2010 WL 4643272, at *12-*13 (S.D. Tex. Nov. 16, 2010); *Johnson v. Bullhead Investments, LLC*, 2010 WL 118274, at *6 (M.D.N.C. Jan. 11, 2010). The premise of such liability is not that the debtor has attempted to collect from the wrong person *per se*, but that they have made a false representation about the character of the debt—namely, about the person who owes it. *See Beattie,* 754 F. Supp. at 392; *Dutton v. Wolhar*, 809 F. Supp. 1130,

1135-37 (D. Del. 1992). However, assuming *arguendo* that the May 22, 2015 collection letter misrepresented the character of the debt, Plaintiff may not assert this as a grounds to defeat summary judgment. There are no allegations in Plaintiff's complaint which, even when construed liberally, give notice of Plaintiff's allegation that she did not open the account or incur the principal amount of the debt. The complaint recites only that Plaintiff "did not owe Verizon Wireless 'Collection Fees' of $17.83." (Compl. ¶ 23). The fair import of these words is that Plaintiff *did* owe the underlying principal balance of $99.06, because it was in fact she who opened and authorized the account. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *see also Hickey v. State University of New York at Stony Brook Hosp.*, 2012 WL 3064170, at *5 (E.D.N.Y. Jul. 27, 2012); *Flemming v. Wurzberger*, 490 F.Supp.2d 320, 324 (W.D.N.Y. 2007). Because this theory of liability is procedurally barred, the Court need not consider whether genuine issues of material fact exist as to availability of a bona fide error defense under 15 U.S.C. § 1692k(c).

Plaintiff's other claim under 15 U.S.C. § 1692e(2)(A) and (10) is that the collection letter does not explicitly state whether the fees are owed to Verizon itself or to ERC. However, the letter explicitly indicates that the "Creditor" was "Verizon Wireless" and discloses a total "Amount of Debt" of $116.89—the sum of the "Principal" of $99.06 and the "Collection Fees" of $17.83. (ECF No. 52-2). The body of the letter reiterates that "your balance *with Verizon Wireless* remains unpaid" and states that "[u]pon receipt and clearance of $116.89, your account will be closed and collection efforts will cease." (ECF No. 52-2) (emphasis added). In sum, even

from the perspective of the "least sophisticated consumer," *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005), the letter creates no ambiguity as to whom the collection fee is owed. "In crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness" and "have held that even the least sophisticated consumer can be presumed to possess … a willingness to read a collection notice with some care." *Id.* (citations and quotations omitted). Furthermore, by including a line item for "Collection Fees," the letter did no more than adopt the very same phrasing used in the underlying agreement, which explicitly provided for the imposition by Verizon of a "collection fee … not to exceed 18 percent." Therefore, unlike in *Acik v. I.C. System, Inc.*, 640 F.Supp.2d 1019 (N.D. Ill. 2009), cited by Plaintiff, the fees were communicated in a sufficiently "clear[] and fair[]" manner for Plaintiff to "ascertain [their] validity" in light of the underlying agreement. *Id.* at 1025 (citations and quotations omitted).

Plaintiff brings no additional claims under Section 1692e independent of her claims under subsections 1692e(2)(A) and (10), which the Court has rejected above. Accordingly, Plaintiff's claims under Section 1692e fail.

3. <u>Plaintiffs' claims against John Does 1-25</u>

In addition to ERC, Plaintiff ostensibly asserts claims against unnamed individuals or businesses denoted as John Does 1 through 25 (the "John Doe Defendants"). These claims fare no better than Plaintiff's claims against ERC itself. Although the Court is strongly inclined to grant summary judgment *sua sponte* in favor of the John Doe Defendants, Fed. R. Civ. P. 56(f) mandates that it afford Plaintiff "notice and a reasonable time to respond" before doing so. Therefore, Plaintiff is directed to show cause as to why summary judgment should not be granted

as to the John Doe Defendants. *See* Fed. R. Civ. P. 56(f)(1); *Jordan v. City of Detroit*, 2012 WL 2526927, at *11 (E.D. Mich. Jun. 29, 2012), *aff'd*, 557 Fed. Appx. 450 (6th Cir. 2014).

## CONCLUSION

For the foregoing reasons, IT IS ORDERED:

FIRST, that ERC's motion for summary judgment is **GRANTED**; and

SECOND, that Plaintiff **SHOW CAUSE**, in writing, on or before **November 30, 2018**, why summary judgment should not be entered as to the claims against the John Doe Defendants.

SO ORDERED.

Dated: Brooklyn, New York
November 13, 2018

/s
I. Leo Glasser                                      U.S.D.J.